DILLON & PALMER v. ALLEN.

I. PER BECK, J., DAY, CH. J., ROTHROCK AND SEEVERS, JJ., CON-
CURRING.

1. **Contract:** MALUM PROHIBITUM: PENALTY. Contracts tending to
promote, or requiring the performance of acts forbidden by statute are
void, even though the statute does not so declare, but merely inflicts a
penalty for its violation.

2. ———: ———: PARTIES IN PARI DELICTO. The fact that one of the
parties will be benefitted by the refusal to enforce such a contract does
not constitute a sufficient ground for its enforcement.

3. ———: ———: ———. The present case distinguished from *Watrous
& Snouffer v. Blair*, 32 Iowa, 58, and *Pangborn v. Westlake*, 36 Id.,
546.

II. PER ADAMS, J., DISSENTING.

4. ———: CONSTRUCTION. Where a contract is susceptible of two mean-
ings, one legal and the other not, that meaning will be given to it which
will make the contract legal.

5. ———: WHEN PERFORMANCE IS ILLEGAL. When the contract itself
is legal, an action may be maintained thereon, notwithstanding some
illegality in the manner of performing it.

*Appeal from Sac Circuit Court.*

FRIDAY, JUNE 15.

ACTION to recover for services rendered by plaintiff in thresh-
ing the grain of defendant. The defendant in his answer
pleaded the following defense: "That it was agreed by and
between the plaintiffs and defendant that the threshing, for
which plaintiff seeks to recover in this action, was to be done
with a machine, all the rods, knuckles or joints of which were
unboxed, and that said threshing was in fact done with a
machine the rods and knuckles of which were wholly un-
boxed." To this defense a demurrer was interposed by defend-
ant and sustained by the court. The defendant abiding by
his answer, judgment was rendered against him, from which
he appeals

*Duffie & McDaid*, for appellant.

*Smith & Wheaton*, for appellees.

BECK, J.—I. At the time the contract sued upon was entered into and performed by plaintiff, the following statute of this state was in force:

"If any person run any threshing machine in this state, without having the two lengths of tumbling rods next the machine, together with the knuckles or joints and jacks of the tumbling rods safely boxed and secured while the machine is running, he shall be deemed guilty of a misdemeanor, and be punished by a fine of not less than ten or more than fifty dollars for every day or part of a day he shall violate this section; and an action may be maintained for services rendered by or with any such threshing machine, for the benefit of the school fund." Code, Sec. 4064. This provision was amended by Chap. 38, Acts Fifteenth General Assembly, as follows:

"Section 1. That section 4064, of chapter 11, Title 24 of the Code, be amended by striking out all that part of said section after the word 'Section,' in the seventh line, and inserting in lieu thereof the following: And any person who shall knowingly permit either his own grain, or any that may be in his possession or under his control, to be threshed by a machine the rods, knuckles or joints of which are not boxed in accordance with the requirements of this section, shall be liable to a like fine as that prescribed for the person running such a machine, both of which fines may be recovered in an action brought before any court of competent jurisdiction.

II. We are required to determine whether, under this statute, the answer of defendant, assailed by the demurrer, presented a sufficient defense to the action. We think it a settled doctrine of the common law, that contracts intended to promote, or requiring the performance of acts forbidden by statute are void, and this is so though the statute does not so declare, but only inflicts a penalty for its violation upon the parties forbidden to do the acts. See Chitty's Contracts, 694–7, and authorities cited in

*1. CONTRACT: malum prohibitum: penalty.*

notes. *Guenther v. Dewein*, 11 Iowa, 133; *Pike v. King*, 16 Iowa, 49.

III. We do not understand that counsel for plaintiffs question the correctness of this rule as it is generally expressed, but claim that this case is within certain admitted exceptions to its operation. They argue, in the first place, that the parties were *in pari delicto*, and, therefore, if defendant be protected from his contract, he will thus be permitted to take advantage of his own wrong. While the principle upon which this position is based is the substance of a maxim of the law, yet it is the subject of exceptions and modifications by the application of other doctrines and rules, which may truly be said of almost all rules of law. The effects of statutes which make unlawful specified acts, upon persons violating them or aiding in their violation, are not considered in their enforcement by the courts. If one offender suffers thereby and the other gains an apparent benefit, no argument can be drawn therefrom for suspending the operation of the law. This is an incident in the administration of justice against which neither legislatures nor the courts can provide. The party suffering, being *in delicto*, cannot complain of the operation of the law, for he merits the punishment prescribed for its violation. It cannot be said that the law confers upon the other a benefit because of his violation of its provisions. What he gains comes to him as a punishment of the other party, not as a reward to himself. In like cases, as where contracts are made upon Sunday, both parties violating prohibitions of the statute, the law is enforced, even though one of the guilty parties may be exempted from a liability that would otherwise exist against him. It often happens that a defendant may avoid his contract in an action thereon by alleging his joint wrong and criminality with the other party in violating a statute by entering into the contract.

*Wheeler v. Russell*, 17 Mass., 258: 2d Chit. Cont. (Russell's Ed., 11th Am.), 975.

IV. Another position of plaintiff's counsel is stated by them in these words: "The contract was in its inception legal. The act, advantage of which is sought to be taken by

*2 parties in pari delicto.*

appellant, was merely an incident of its execution." It is argued that the court cannot avoid a legal contract on account of a violation of law in its execution. Without admitting the soundness of the argument based upon the proposition, the question thus presented may be briefly disposed of by the single remark, that the proposition of fact itself is not supported but directly negatived by the record. The answer of defendant explicitly alleges that the contract for the threshing contemplated the performance of the work by a machine not boxed as required by statute. The question discussed is not, therefore, in the case.

V. Plaintiff relies upon *Watrous & Snouffer v. Blair*, 32 Iowa, 58, and *Pangborn v. Westlake*, 36 Iowa, 546, in which we held valid contracts for the sale of town lots entered into before the plats were recorded as required by statute, which imposed a penalty for failure to comply therewith. These decisions are based upon the grounds that the party enforcing the contract, and the owner of the land required to record the plat, were not *in pari delicto*, and no legislative intention could be discovered in the statute violated, to render the contract void. The case before us is different. Here the parties are *in pari delicto*, and as the act required by the contract in question is the very *corpus delicto* contemplated by the statute, it was the legislative intention to hold it for nought. The distinction between the cases may be made plain by a little further consideration. In the case before us the statute forbids the use of threshing machines wanting in certain contrivances for the protection of those employed about them. The contract in this case was for the use of such a machine, and was performed by such use. The very act performed under the contract was forbidden by the statute, and the parties thereto were *in pari delicto*. In the other cases referred to above, the statute provides that any person who shall sell a town lot before the plat is recorded, shall be subject to a prescribed penalty. The statute does not forbid selling the lots before the plat is recorded, but fixes a penalty against the owner of the land platted for failing to record the plat. The sale is not unlawful; the *corpus delicto*

prescribed in the statute is the omission to record the plat. The purchaser was guilty of no violation of law; the contract was not forbidden. It is, therefore, valid.

VI. *Hill v. Smith*, Morris 70, is cited and relied upon by plaintiff. It was an action upon a promissory note given for a claim upon, or possessory right to, public lands purchased by the defendant of plaintiff. An act of congress provided that any one taking possession of, or settling upon the public lands, should forfeit all his right, title, or claim to the lands occupied, to the United States. There is no provision in the act making the occupation or transfer of lands so occupied a public offense. It provides no further than that persons making such settlements upon public lands shall be dispossessed, and their rights and claims shall be taken by the government. The court held that this statute did not avoid the note. This language, which is quoted and relied upon by plaintiff, is used in the opinion after the discussion of several authorities. "The rule to be drawn from these cases, therefore, appears to be, that when an act is absolutely prohibited by statute, or is contrary to public policy, all notes, etc., given in furtherance of that act, are null and void; but where the statute fixes a mere penalty, contracts in relation to matters which subject the maker to that penalty, are not on that account invalidated. When not intrinsically wrong the individual is permitted to perform the act upon the payment of the penalty. This is a species of license money, exacted for the privilege of doing a certain thing, but the act is not otherwise unlawful, unless expressly declared so." It is very plain that the term "*penalty*," used by the court was not intended to designate a punishment, or forfeiture affixed by statute to a criminal act prescribed therein. It is rather used in the sense of the word *forfeiture* when applied to contracts and estates. In this sense its use does not cause the latter part of the quotation to conflict with the uniform current of authorities as announced in the first part of this quotation itself. The facts of the case, and the connection, show that it was used in the sense we have indicated. The statute under consideration did not prescribe an offense, and simply subjected the persons making settle-.

ments upon public lands to a forfeiture of their claim or interest therein to the government. The case gives no support to the doctrines contended for by plaintiffs' counsel.

The distinction between the case before us and the two just above referred to, determines the want of applicability of other cases from the courts of other states cited by counsel for plaintiffs. They demand no further notice.

*Ingersoll v. Randall*, 14 Minn., 400, was decided upon a statute similar to our own. The facts of that case are almost identical with those before us, and a conclusion was reached therein that recovery could not be had upon a contract similar to the one involved in this case. The decision supports our conclusion herein.

In our opinion the demurrer to defendant's answer should have been overruled.

REVERSED.

ADAMS, J., *dissenting.*—I think that the plaintiffs are entitled to recover. In determining whether they are or not, we have to consider, first, whether the illegality was in the contract itself, or merely in the manner of performing it, and second, whether, if it was merely in the manner of performing it, that should preclude the plaintiffs from recovering. In the construction of the contract I think that there is no reasonable room for doubt. It is agreed that the contract was that "the threshing was to be done with a machine, all rods, knuckles and joints of which were unboxed." Now this either means simply that the rods, etc., were unboxed at the time the contract was made, or that they should remain unboxed during the performance of the work. That the former is the true meaning is to my mind entirely clear. The plaintiffs agreed to do the defendant's threshing with their machine, or some other machine which the parties had in mind, and that machine had unboxed rods. This is the fair construction to be given to the words in which we find the contract expressed, in the agreed record. If the contract had the other meaning it would not only be illegal but unaccountable. What possible motive can we suppose the parties

to have had to agree that the rods should remain unboxed while the work should be done?

Again, we are not to presume that the parties intended to violate the law, but we are to presume the contrary. If a contract is susceptible of two meanings, one legal and the other not, that meaning will be given it which will make the contract legal. Chitty on Con., 977.

*4. ——: construction.*

But to my mind it is unnecessary to resort to this rule of construction. I think it may be demonstrated that the parties did not agree that the rods should remain unboxed while the work should be done. Suppose the plaintiffs had boxed the rods and performed the work with them boxed, would that have been a performance of the contract within its fair intendment? That it would I think will not be denied. It seems to me absurd to suppose that the mere fact that the rods were unboxed at the time the contract was made (and that is the literal construction of the words used), would enable the defendant to escape liability to pay for the work if the rods were boxed at the time the work was done. It follows, however, that if the contract could have been performed with the rods boxed, it was not a part of the contract that they should remain unboxed.

Having shown, as I think, that the illegality was not in the contract but *in the manner of performing it*, I come to the second inquiry, and that is whether the illegal performance of a legal contract should prevent the plaintiffs from recovering.

*5. ——: when performance is illegal.*

In *Wetherell v. Jones*, 3 B. and Ald., 221, Lord TENTERDEN said: "Where the consideration and matter to be performed are both legal, we are not aware that a plaintiff has ever been precluded from recovering by an infringement of the law not contemplated by the contract, in the performance of something to be done on his part." In Smith on Con., 247, the author, in speaking of the distinction to be made between a contract which is legal and some incidental illegality in carrying it into effect, says: "In these cases the contract is good and may be made the subject-matter of an action, notwithstanding the breach of the law which has occurred in carrying

it into effect." By way of illustration, he says: "Suppose, for instance, A employs B, a builder, to repair the front of his house, and B in so doing erects an indictable nuisance in the public street; still, as the contract to repair the house is legal, and the erection of the nuisance in doing so was not contemplated in the agreement, B might recover for the repairs which he executed." The correctness of this doctrine, so far as I have discovered, is nowhere disputed. The only case which I have seen which supports the doctrine of the majority opinion is *Ingersoll v. Randall*, 14 Minn., 400. In that case the turning point is expressed in these words: "The threshing, which was the consideration of the defendant's promise, was unlawful, and therefore will not support the promise." But it is plain to be seen that the court failed to observe the distinction which is to be made between the doing of a thing which the law prohibits, and the doing of a thing which the law allows, *but in a manner prohibited*. One of the three judges constituting the court dissented, and I cannot think that the case should have much weight with us as an authority.