# JUNE TERM, 1895.*

---

## CONKEY v. CARPENTER.

1. CREDIBILITY OF WITNESS—INSTRUCTIONS TO JURY.

   Where a witness is shown to have been convicted of crime, it is proper for the court to instruct the jury that they may take that fact into consideration in determining his credibility.

2. SAME.

   An instruction that the jury may consider, as bearing upon the credibility of a witness, the fact that " something has been said about his having been interfered with in some manner by the police for alleged ill treatment of his wife," is reversible error where there is no evidence upon which to base the remark.

3. SAME—PROOF OF REPUTATION.

   The presumption is that men are truthful, and the fact that one's character in that regard has never been discussed is cogent evidence of good reputation. It is error, therefore, to instruct the jury, in a case where a witness is sought to be impeached, that a person who testifies that he has never heard the witness' reputation for truth and veracity questioned at all is not entitled to the same consideration as one who testifies that he has heard it questioned and discussed among the neighbors of the witness.

4. VETERINARY SURGEON—QUALIFICATION—ACTION FOR SERVICES—BURDEN OF PROOF.

   One holding himself out as a veterinary surgeon undertakes that he possesses ordinary professional skill, and therefore, in an action for services rendered in such capacity, it devolves upon him to prove his qualification, at least so long as his right to practice is not regulated by statute.

5. SUIT FOR PROFESSIONAL SERVICES — PROOF OF COMPETENCY—ADMISSION TO PRACTICE.

   In an action for professional services, where there are no statutory regulations, the burden resting upon the plaintiff of estab-

---

* Continued from Vol. 105.

lishing his qualification to practice may be discharged by showing his graduation from some reputable college or school, whereby a presumption of competency is created, or by proving his study and experience. There is a like presumption of qualification where one has been admitted to practice under the laws of the State; but whether, such a statute existing, plaintiff will be presumed to have been authorized to practice thereunder or must prove the fact,—*quære.*

6. COSTS IN SUPREME COURT—PRINTING RECORD.
   Costs for printing record are denied because of its undue prolixity.

Error to Kent; Adsit, J. Submitted May 2, 1895. Decided July 2, 1895.

*Assumpsit* by Leonard L. Conkey against Frank L. Carpenter for services as a veterinary surgeon. From a judgment for defendant, plaintiff brings error. Reversed.

*Hatch & Wilson,* for appellant.

*Frank L. Carpenter, in pro. per.*

GRANT, J. Plaintiff brought suit in justice's court to recover $3.50 "for services as a veterinary surgeon in treating a horse for the defendant." Upon the second trial in the justice's court plaintiff recovered a verdict. Defendant appealed to the circuit court. The case was tried twice in that court, and, upon the second trial, verdict and judgment were for the defendant; and plaintiff has now brought the case to this court by writ of error. So long as the law permits these petty cases to be appealed to this court, we have no alternative but to dispose of them upon legal principles, and reverse them for prejudicial error. The only errors assigned are upon the charge of the court. Two of the instructions were so clearly wrong that we feel compelled to reverse the judgment.

1. The court instructed the jury as follows:

"In this case the plaintiff has admitted, on his cross-examination, that he was at one time tried and convicted,

in Cass county, in this State, of the crime of larceny of nine head of cattle, for which he was sentenced to imprisonment for the term of six months in the state house of correction and reformatory at Ionia, one of the penal institutions of this State; and something has been said about his having been interfered with in some manner by the police for alleged ill treatment of his wife. You have a right, and it is your duty, to take all these matters into consideration in arriving at the credibility of the plaintiff in this case in his own behalf; and it is for you to say, under all the circumstances, whether or not you will give his testimony such credibility as you will the testimony of those whose lives have not been shown to have been tainted with crime."

The comment upon the conviction and sentence was correct. The remark about his having been interfered with by the police for ill-treating his wife was error, because there was no evidence whatever upon which to base it. Yet the jury were told that this was a circumstance for them to consider in arriving at the credibility of the plaintiff.

2. Testimony was introduced to prove that the plaintiff's reputation for truth and veracity was bad, and on his part to prove that it was good. After properly commenting upon this testimony, and saying to the jury that cross-examination usually revealed the real knowledge the witnesses possessed on the subject, the judge said:

"Of course, a witness who testifies he has never heard the reputation of a person for truth and veracity questioned at all is not entitled to that consideration in that respect that a witness is who testifies that he has heard it questioned and discussed among neighbors of such a person."

The instruction was clearly erroneous. The presumption is that men are truthful. The fact that a man or a woman daily walks among his or her neighbors without an attack from even the tongue of slander, touching his or her character for honesty, truthfulness, and virtue, is evidence of good reputation in these respects. The man

or woman of unsullied character needs not to have that character discussed, questioned, or talked about in order to establish that reputation to which the neighbors may testify. To discuss and talk about it may imply doubt. Absolute silence usually means confidence in one's integrity and truthfulness, and is the sound basis of a good reputation. The supreme court of Alabama has said:

"To acquire a knowledge of a person's general character, it is not necessary to know all his neighbors, or to hear any one speak of his disposition to tell the truth, or his integrity drawn in question. His virtues may be universally acknowledged, and the bright spots so prominent that his reputation exhibits no dark traits. The veracity of such a man would rarely be spoken of, and, if at all, in no other than terms of commendation." *Hadjo* v. *Gooden*, 13 Ala. 718.

See, also, *Dave* v. *State*, 22 Ala. 37; *Ward* v. *State*, 28 Ala. 53; *Childs* v. *State*, 55 Ala. 28.

The supreme court of Missouri has said:

"That reputation may with justice well be called good which no slanderer has ever ventured to even so much as question. * * * When it can be said of a man by those well acquainted with him that they never heard his reputation as to truth and morals discussed, denied, or doubted, it is equivalent to passing upon him the highest encomium." *State* v. *Grate*, 68 Mo. 27.

3. The circuit judge, after stating the claims of the parties, said to the jury that the plaintiff, by holding himself out to the defendant as a veterinary surgeon, contracted to be possessed of the necessary skill and learning, and that it devolved upon him to show by a preponderance of the evidence that he had acquired and possessed the necessary learning and skill to practice intelligently and usefully this profession to which he claimed to belong. The plaintiff, in his declaration, alleged that he was a veterinary surgeon. He held himself out to the defendant as such. Bishop, in his work on Contracts (section 1416), says:

"A physician, surgeon, or dentist undertakes in law to

supplement his reasonable care and honest endeavors with ordinary professional skill."

This applies to a veterinary surgeon. It requires education to be able to treat diseases of dumb animals as well as diseases of men. There is no presumption of qualification. Plaintiff deemed it essential to allege it in his declaration. If it was an essential allegation, it was equally essential that he should establish it by proof. If he was simply a "quack," without education or experience, and was employed by the defendant upon the representation that he was a qualified veterinary surgeon, he could not recover. Professional employment stands upon a different basis from other businesses. *Pennock* v. *Fuller*, 41 Mich. 153, and authorities there cited. Plaintiff admitted that he had never studied veterinary surgery except during the six months that he was confined in prison at Ionia. We are not aware that it is a part of the punishment inflicted upon convicts in that institution to study veterinary surgery, nor that they furnish a library to them for that purpose. His education and experience were peculiarly within his own knowledge. It was incumbent upon him to prove them, and not upon the defendant to disprove them. Physicians who are graduates of medical colleges, or are admitted to practice under the laws of the State, will be presumed competent, and malpractice will then be the only question to determine in the individual case.

My attention has been called to the following statement in 18 Am. & Eng. Enc. Law, p. 432:

"Where the question of license or qualification of a physician arises collaterally in a civil action between party and party, or between the doctor and the one who employs him, then the license or due qualification *under a statute to practice* will be presumed, and the burden of proof thrown upon him who denies such qualification or license. But in case of a prosecution on behalf of the public the rule is otherwise, and in such cases license or due qualification under the statute is not presumed, and it rests with the defendant to prove it."

The principal cases cited in support of this rule are *City of Chicago* v. *Wood,* 24 Ill. App. 40, from which the language is taken, and *Williams* v. *People,* 20 Ill. App. 92. Whatever soundness there may be in holding a presumption to exist in a civil case, but not in a criminal one, it is sufficient to say of these authorities that they are based entirely upon the statute. It is there said that—

"The reason why the license will be presumed where there is no evidence to the contrary rests upon the principle that, when an act is required by positive law to be done, the omission of which would be a misdemeanor, the law presumes that it has been done, and therefore the party relying on the omission must make some proof of it, though it be a negative."

The contrary doctrine was formerly held by the same court,—*City of Chicago* v. *Honey,* 10 Ill. App. 535; but that case is overruled expressly by *City of Chicago* v. *Wood.*

In *Pearce* v. *Whale,* 5 Barn. & C. 38, also cited to sustain the above, plaintiff was an attorney, and brought suit for services as such in conducting a suit for defendant. The defense was that he had not been readmitted an attorney of the court of king's bench, and had not taken out a certificate from 1814 to 1820, inclusive, as required by the statute. He was admitted an attorney of that court in 1792. It was held that he had made a *prima facie* case that he was an attorney of the court of common pleas by having acted in that character, and it was therefore incumbent on the defendant to show that he had never been readmitted as an attorney of that court.

These authorities do not bear upon the present case, where no qualifications are prescribed by statute.

In *Sutton* v. *Facey,* 1 Mich. 243, the question arose upon the exemption of a horse claimed to have been used by Facey in his business as a physician. It was there held to be the general rule that, where the plaintiff alleged generally that he was a physician, parol proof of his having practiced as such was *prima facie* sufficient evidence of professional character; citing 2 Starkie, Ev. 218, and note 10. The court, after laying down this rule, say:

"But this rule assumes that practicing as such does not constitute the person a physician, but only creates a presumption of fact that he is so, until such presumption is rebutted, and indicates the same distinction between those who are physicians and those who profess and 'hold themselves out' to be such without possessing the requisite qualifications."

Speaking of another portion of the charge of the court to the jury, it is further said:

"The language used by the court below implies that, if Facey was occupied in the business of practicing physic, he was therefore a physician, within the meaning of the exemption law, whether he had any knowledge of diseases and remedies or not. In this portion of the charge, I think, the court below erred."

In 3 Wait, Act. & Def., at page 595, it is said:

"One who offers himself for employment in a professional capacity undertakes that he possesses that reasonable degree of learning and skill which is ordinarily possessed by professors of the same art or science, and which is ordinarily regarded by the community, and by those conversant with the employment, as necessary to qualify him to engage in the business."

If this be the rule, it follows that the *onus probandi* is on him.

Practically, the burden of proof upon this point was assumed by the plaintiff upon the trial, for his attorney, at the beginning, asked him about his experience in the business of a veterinary surgeon, and he testified that he had been engaged in it for 16 years. I think it is the common practice, when a professional man sues for services as such, to prove his qualification. This is done by showing his admission to practice under the statute, his graduation from some reputable college or school, or his study and experience, if his right to practice is not regulated by statute. I think the instruction was correct.

The record in this case contains 72 pages. This was

wholly unnecessary. A brief statement of 5 or 6 pages, showing what the evidence tended to prove, would have been sufficient to raise all the questions. For this reason, no costs will be allowed the appellant for printing the record.

Judgment reversed, and new trial ordered.

McGRATH, C. J., and LONG, J., concurred with GRANT, J. HOOKER and MONTGOMERY, JJ., concurred in the result.