Harry M. Hoxsey, Appellee, v. Norman G. Baker, Appellant.

No. 41857.

February 7, 1933.

Rehearing Denied May 6, 1933.

Bush & Bush, and John F. Devitt, for appellant.

John G. Kammerer and Thompson & Thompson, for appellee.

Albert, J.—The fact situation developed by the pleadings, which are quite voluminous, is that defendant, Norman Baker, was running an institution known as the "Baker Institute", which pur-

ported to cure cancer, and on April 1, 1930, plaintiff and defendant entered into a written contract which is too lengthy to be set out in full, but the substance of which, however, is that it was agreed that Baker was in possession of a secret treatment for cancer, and the sole owner of a hospital or institute called the "Baker Institute", located in the city of Muscatine, and that plaintiff, Harry M. Hoxsey, was in possession of a secret treatment for cancer which differed from the Baker treatment. Hoxsey had experience in administering said treatment, and it was agreed between the parties that each should reveal to the other, in strict confidence, his process or treatment for cancer, and reduce said process or treatment to a detailed written statement so that the other could make use of the same, and each agreed to do this simultaneously with the delivery of the contract. Hoxsey agreed to deliver to Baker cancer medicine then in his possession, and to instruct Baker in the technique of compounding the same, but the powder cancer compound could not be taught until October, 1930, when ingredients could be procured. Hoxsey agreed to devote his whole time and attention to administering faithfully and to the best of his ability, both of said treatments, or a combination of the two, exclusively in the hospital or institution known as the "Baker Institute", and agreed and bound himself not to engage in the treatment of cancer except in connection with the first party, Baker, in the institution operated by the first party, at any time during the life of the contract, etc.

It was further agreed that Hoxsey was to devote his time from 9 a. m. to 5 p. m. each weekday and such other time as he might desire to devote to said treatments.

In consideration of the premises, Baker agreed during the life of the contract to pay to Hoxsey 15 per cent of the gross receipts received by Baker for patients for treatment of cancer, or other ailments in which the medicines comprised of either of the two mentioned cancer formulas were used, including sums received for rooms and board from such patients, and, on the sale of each of the medicines used in the two cancer formulas herein mentioned, Hoxsey was to receive 50 per cent of the net sales or net income from such sales to outside parties, firms, or corporations.

It was further agreed that the medicines or process of making the same should be under the sole direction and supervision of both parties, with a private laboratory to be maintained by Baker and known as "Baker-Hoxsey Laboratory", and all cancer medicines of

secret nature should be made, compounded, or kept in said laboratory or under suitable lock and key, for protection of both parties. Hoxsey was to have charge of the compounding of his secret formulas, and Baker was to have charge of the compounding of his secret formulas.

It was further agreed that the percentage payable to Hoxsey as therein stipulated was to be paid every three months, when an audit of the books was made, and all book accounts pertaining to cancer treatments and sales of medicines mentioned therein should be open for inspection by Hoxsey at any time, and a weekly drawing not to exceed $250 was to be paid to Hoxsey, provided said amount did not exceed his percentage of gross receipts as therein mentioned.

This contract was to continue for a period of twenty-five years from date, unless canceled by mutual written agreement of both parties.

There are numerous other provisions in the contract, but this is a statement of a sufficient part thereof for the purposes of considering the questions raised in the case.

Plaintiff alleged in his petition that he has and did on his part perform all of the terms, conditions, and requirements provided therein for him to perform, and so continued until the 4th day of September, 1930. On this latter date, the plaintiff discontinued to act under said contract because of defendant's breach thereof, which consisted in that the defendant refused to audit the books and failed and refused to examine the books of the Baker Institute, and failed and refused to pay plaintiff, as by the terms of the contract provided, but, on the contrary, issued an order that Hoxsey's secret formula for cancer be discontinued and at an end on or about September 1, 1930; that plaintiff has attempted on various occasions to have the books of the Baker Institute audited which defendant refused and failed to do, but, on the contrary, secreted said books with the object and intention of placing them beyond the power of audit, thereby defeating and defrauding this plaintiff of what is due him under the contract.

Plaintiff alleges and avers that he believes that the defendant received from the use of said cancer formulas or secret treatment and processes the sum of $540,000, of which said sum 15 per cent thereof was to be paid to this plaintiff; that there is now due and owing the plaintiff, under said contract, $81,000 and defendant refused to pay the same.

In the second count, plaintiff alleged that he was the owner of a secret process or formula for treating cancer, and defendant was also the owner of a secret process or formula for treating cancer which was different from that of the plaintiff; that between April 1 and September 4, 1930, at the oral instance and request of the defendant, he furnished to the defendant and permitted him to use a secret process or formula of the plaintiff for treatment of cancer at the institute or hospital styled "The Baker Institute" in Muscatine, Iowa; that the defendant accepted the use of said process or formula for the treatment of cancer and used the same from April 1, 1930, to September 4, 1930, and the reasonable value for the use of said process or formula is $81,000, no part of which has been paid. Therefore plaintiff asks judgment for the sum of $81,000, with interest.

 A motion for a more specific statement was made, which was overruled by the court; hence this appeal.

It is first urged that this motion, being an interlocutory order or ruling, no appeal will lie. We settled this question contrary to this contention in the case of Dorman v. Credit Reference & Reporting Co., 213 Iowa 1016, 241 N. W. 436.

 The first ground of the motion for a more specific statement is that the plaintiff be required to set out whether or not he is duly licensed to practice medicine in the state of Iowa, or duly licensed to practice pharmacy under the laws of Iowa.

It will be noticed by a reference to the pleadings that the plaintiff is alleged to have possessed a secret formula for treating those suffering from cancer, and he agreed to put in the time specified in the contract in administering said medicine produced by his formula, as well as that produced by Baker's formula in the Baker Institute, and he alleges in his petition that he performed said contract, so it must be that during the time in controversy Hoxsey devoted his time and attention in the Baker Institute to the administering to patients of these cancer remedies. If he were thus engaged during the time for which he seeks to recover, then under title 8 of the Code of 1931 (section 2438 et seq.), he would be required to have a license to practice medicine as therein provided, and, if he had no such license, he could not recover for services thus performed.

It is evident from his petition that he is seeking to recover for services which could only be performed by a legally licensed physician. It seems to be well settled by the authorities that, when this

condition exists, and suit is brought for such services, the plaintiff to make a good cause of action must state that he is a legally licensed physician authorized to perform such services. It is so held in Swift v. Kelly, 63 Tex. Civ. App. 270, 133 S. W. 901; Bedford Belt Ry. Co. v. McDonald, 12 Ind. App. 620, 40 N. E. 821; Westbrook v. Nelson, 64 Kan. 436, 67 P. 884; Rider v. Ashland County, 87 Wis. 160, 58 N. W. 236; Conkey v. Carpenter, 106 Mich. 1, 63 N. W. 990. See, also, Lacy v. Kossuth County, 106 Iowa 16, 75 N. W. 689.

It is equally well settled that, where the law requires a person who practices a profession such as medicine or pharmacy to obtain a license, one who practices without having obtained such license cannot recover compensation for services so rendered. Lynch v. Kathmann, 180 Iowa 607, 163 N. W. 408; Lyon v. Leet, 199 Iowa 1034, 202 N. W. 881; and see, also, as bearing upon this question, Dillon & Palmer v. Allen, 46 Iowa 299, 26 Am. Rep. 145; Johnson County Savings Bank v. Creston, 212 Iowa 929, 231 N. W. 705, 237 N. W. 507; Mandlebaum v. Gregovich, 17 Nev. 87, 28 P. 121, 45 Am. Rep. 433.

It follows, therefore, that motion for a more specific statement, requiring plaintiff to set out whether or not he was a licensed physician, should have been sustained.

In the second ground of the motion for a more specific statement, the defendant requested that the plaintiff be required to set out the contents of his secret formula. We are disposed to think the ruling on this ground of the motion was right. The contract between the parties was that each had a secret formula for the treatment of cancer. Plaintiff alleged that he furnished the same to the defendant, and it was used in the Baker Institute. The contract provided that the plaintiff and the defendant should, on the signing of the contract, communicate to each other the contents of each formula, and, plaintiff having alleged that he performed his contract, presumptively the defendant knew the elements constituting plaintiff's secret formula. More than this, so far as the question of pleadings is concerned, we cannot understand the necessity of setting out the contents of plaintiff's formula.

Another ground of the motion refers to count 2, in that said count alleged that plaintiff furnished to the defendant and permitted him to use his secret process, and the defendant accepted the use of said process or formula, and plaintiff should be required to explain how it was furnished and how it was accepted by the defendant. The

90

terms "furnished and accepted" are words of common use and generally understood, and need no further elaboration.

The other grounds of the motion need no further attention.— Reversed.

KINDIG, C. J., and EVANS, STEVENS, UTTERBACK, and KINTZINGER, JJ., concur.