# IN THE SUPREME COURT OF IOWA

No. 18–1354

Filed February 14, 2020

**33 CARPENTERS CONSTRUCTION, INC.,**

Appellant,

vs.

**STATE FARM LIFE AND CASUALTY COMPANY,**

Appellee.

---

Appeal from the Iowa District Court for Scott County, Henry W. Latham II, Judge.

Residential contractor lacking public adjuster license appeals summary judgment dismissing its breach of contract claim against homeowners' insurer. **AFFIRMED.**

Edward F. Noethe, Kyle J. McGinn, and Emily A. Weiss (until withdrawal) of McGinn, Springer & Noethe PLC, Council Bluffs, for appellant.

Brenda K. Wallrichs and Mark J. Parmenter of Lederer Weston Craig PLC, Cedar Rapids, for appellee.

**WATERMAN, Justice.**

This appeal is one of three[1] we decide today concerning whether a residential contractor acting as an unlicensed public adjuster can enforce its postloss contractual assignment of insurance benefits against the homeowners' insurer. A controlling statute, Iowa Code section 103A.71(5) (2016), declares "void" contracts entered into by residential contractors who perform public adjuster services without the license required under section 522C.4. Those laws were enacted to protect homeowners and insurers against exploitation by unlicensed contractors after hailstorms, tornadoes, and other natural disasters.

The plaintiff-contractor in this case represented the homeowners as an assignee of their insurance claim for hail damage. The defendant-insurer paid what it determined was owed, and the plaintiff-contractor sued for much more. The district court granted the defendant-insurer's motion for summary judgment on grounds that the plaintiff-contractor's contractual assignment was unenforceable. We retained the plaintiff-contractor's appeal.

On our review, we apply section 103A.71(5) to hold the assignment contract void. We reject the plaintiff's argument that courts must honor these "void" contracts unless specifically directed otherwise by the Iowa Insurance Commissioner. For the reasons explained below, we affirm the summary judgment.

## I. Background Facts and Proceedings.

On March 15, 2016, a hailstorm struck Bettendorf and damaged the roof and siding of a home owned by Brant and Sarah Clausen. The

---

[1]The related cases filed today are *33 Carpenters Construction, Inc. v. Cincinnati Insurance*, No. 17–1979, ___ N.W.2d ___ (Iowa 2020), and *33 Carpenters Construction, Inc. v. IMT Insurance*, No. 19–0678, ___ N.W.2d ___ (Iowa 2020).

Clausens initially were unaware of any storm damage to their property. Their home was insured through State Farm Fire and Casualty Company (State Farm). On June 29, Matt Shepherd, an employee of 33 Carpenters Construction, Inc. (33 Carpenters), approached the Clausens at their home and asked if he could inspect their roof for hail damage. The Clausens agreed to permit his inspection. Shepherd found hail damage to the roof and siding, which was news to the Clausens.

Shepherd presented, and the parties signed, two documents, labeled "Agreement" and "Insurance Contingency," whereby 33 Carpenters agreed to repair the storm damage in exchange for the Clausens' insurance proceeds. The documents also purportedly authorized 33 Carpenters to act on behalf of the Clausens regarding the submission, adjustment, and payment of an insurance claim for the hail damage to their roof.

> **Insurance/Mortgage Company Authorization:** I authorize and direct my insurers and mortgagees to communicate directly with 33 Carpenters Construction to include discussions regarding scope of work and payment. I also authorize and direct my insurers and Mortgagees to include 33 Carpenters Construction as a joint payee on all checks.

The Insurance Contingency authorized 33 Carpenters to "meet with and discuss hail and wind damage" of the Clausen property with their insurance company, State Farm, and it required the Clausens to acknowledge that "33 Carpenters Construction will act as their General Contractor to obtain appropriate property damage adjustments."

That same day, the Clausens made a property damage claim to State Farm. About two weeks later, State Farm representatives visited the Clausen home to inspect the storm damage. Shepherd attended the inspection without the Clausens. After this meeting, State Farm formulated an initial estimate calculating the replacement cost value, or

total repair costs, of $30,607. After subtracting depreciation and the Clausens' deductible, State Farm paid the Clausens $22,198. The Clausens transferred this payment to 33 Carpenters, and it began repairing the roof and siding.

Subsequently, 33 Carpenters prepared an undated[2] "Supplement" to the insurance claim, claiming $15,087 in additional repair costs, $645 in tax, and $9137 in overhead and profit for a new claim of $24,869 above State Farm's initial determination of the total repair cost, amounting to an increase of 81.3%. State Farm's adjuster returned to the Clausen home to assess the new claims.

On February 22, 2017, the Clausens signed another document that purportedly assigned their insurance claim with State Farm to 33 Carpenters. This "Assignment of Claim and Benefits" stated,

> FOR VALUE RECEIVED, the Assignor [Brant Clausen] hereby sells and transfers to the Assignee [33 Carpenters] and its successors, assigns and personal representatives, any and all claims, payment drafts, demands, and cause or causes of action of any kind whatsoever which the Assignee [33 Carpenters] has or may have against <u>State Farm</u> (insurance company), arising from the following claim [for hail and wind damage.]

This document further stated that "all future payments or settlements for the above referenced claim" should be made directly to 33 Carpenters.

On March 10, 33 Carpenters filed this civil action against State Farm. 33 Carpenters alleged that it is the assignee of the Clausens' rights and that State Farm had breached its insurance policy by failing to pay 33 Carpenters "all benefits due and owing under the policy." State Farm filed an answer denying those allegations.

---

[2] 33 Carpenters asserted in its brief that the Supplement was prepared before the February 22 assignment.

Later that month, State Farm prepared a substituted estimate in response to the 33 Carpenters Supplement. The substituted estimate increased the replacement cost value to $40,953 to reflect the need to replace all of the siding on the Clausen home since the original siding became unavailable during the interim between the initial estimate and the repair work. In recognition of this increase, State Farm paid an additional $15,681 directly to 33 Carpenters and the Clausens' mortgage company, and 33 Carpenters deposited the payment.

Next, on August 21, after State Farm had made the second payment and after 33 Carpenters had completed the repairs, 33 Carpenters submitted yet another cost estimate, claiming $64,973 for the cost of repairs and $12,994 in overhead and profit, increasing the total claim to $77,968, a 90.4% increase from State Farm's substituted estimate of the total replacement cost value. State Farm refused to pay the additional sums. Two months later, 33 Carpenters filed a motion to compel appraisal of the loss. The district court denied the motion.

State Farm filed a motion for summary judgment on May 15, 2018, claiming that the contract between 33 Carpenters and the Clausens was unenforceable because 33 Carpenters was not a licensed public adjuster, as required under Iowa Code chapter 522C. State Farm supported its motion with the contractual documents and other evidence showing that 33 Carpenters acted as a public adjuster for the Clausens. The summary judgment record included a printout of 33 Carpenters' public webpage that outlined its six-step process for a common insurance claim:

> **STEP 1**
> **Contact 33 Carpenters Construction (http://33carpentersconstruction.com/contact) for a free comprehensive storm damage evaluation and assessment.**
> [phone numbers of the various 33 Carpenters locations]

**STEP 2**
**Contact your insurance company to file a claim.**
Inform your insurance company that your home was impacted by recent severe storms and your home was inspected by a licensed general contractor and areas of your home are damaged.
**STEP 3**
**Inform us when the insurance adjuster will be coming out to assess the damage on your home or property.**
We will meet personally with your insurance adjuster, as an ADVOCATE on YOUR behalf, and discuss the work that needs to be completed to repair your home to its original beauty and value. Your insurance adjuster will submit a report that will list the work that needs to be completed and a copy will be sent to you.
**STEP 4**
**Send us a copy of the summary report put together by your insurance company.**
Included in the summary report will be the itemized costs of the work that needs to be performed. We will work directly with your insurance company to ensure that all damaged areas of your home will be included on the report.
**STEP 5**
**We will meet with you to make product selections.**
Our entire team has a vast and comprehensive knowledge about all home exterior products and we are happy to help you in the decision making process regarding product selection and color options. We will work with your schedule to determine the best day to start the necessary repairs to your home.
**STEP 6**
**Payment.**
We will provide you and your insurance company with a copy of the invoice when the work is completed. You may be required to get your mortgage company to endorse the check from the insurance company before payment can be submitted to us for the work completed to your home. You are only responsible for your insurance deductible and any agreed upon upgrades.

33 Carpenters resisted summary judgment by arguing that the Iowa Insurance Commissioner has the sole authority to enforce the provisions of Iowa Code chapter 522C such that State Farm cannot use the statute to invalidate the assignment agreement. Alternatively, 33 Carpenters argued its conduct did not violate Iowa Code chapter 522C or 507A. 33 Carpenters asserted that the only relevant event before the February 22

assignment was the evaluation of the claim attended by State Farm representatives and Shepherd, and it stated this was not improper because Shepherd did not negotiate or advocate for the Clausens during that meeting. The other events, 33 Carpenters claimed, occurred after the Clausens assigned the claim to 33 Carpenters, which it stated it wholly owned and could negotiate without a public adjuster license.

The district court granted the motion for summary judgment, ruling that the Clausens' assignment of their claim to 33 Carpenters was invalid under Iowa law because 33 Carpenters acted as an unlicensed public adjuster as defined in Iowa Code section 522C.2. The district court considered the undisputed facts that the Clausens were unaware of any storm damage and had made no insurance claim before they were approached by 33 Carpenters, their agreement authorized 33 Carpenters to communicate with State Farm, 33 Carpenters' representative Shepherd attended the roof inspection with State Farm without the Clausens, and 33 Carpenters received the proceeds of the checks State Farm issued to the Clausens for the claim. The district court determined that,

> by undertaking these actions, 33 Carpenters was acting as a public adjuster as defined in Iowa Code section 522C.2. 33 Carpenters did so without the requisite license. Because 33 Carpenters was acting as an unlicensed public adjuster prior to the assignment, the assignment is invalid under Iowa law.

The district court ruled that 33 Carpenters could not recover from State Farm and granted State Farm's motion for summary judgment. The district court did not reach the question of whether the Iowa Insurance Commissioner has the sole authority to enforce the provisions of Iowa Code chapter 522C, and 33 Carpenters filed no motion to seek a ruling on that issue. *See* Iowa R. Civ. P. 1.904(2). 33 Carpenters appealed, and we retained the appeal.

## II. Standard of Review.

We review an order granting summary judgment for correction of errors at law. *City of West Liberty v. Emp'rs Mut. Cas. Co.*, 922 N.W.2d 876, 879 (Iowa 2019). Summary judgment is appropriate when the moving party establishes there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Id.* A matter can be resolved on summary judgment when the dispute is over the legal consequences of undisputed facts. *Boelman v. Grinnell Mut. Reins. Co.*, 826 N.W.2d 494, 501 (Iowa 2013). "[W]e examine the record in the light most favorable to the nonmoving party." *Id.*

## III. The District Court's Authority to Adjudicate the Contract's Validity.

**A. Error Preservation.** 33 Carpenters argued in district court and argues on appeal that the district court erred in applying Iowa Code section 522C.4 to invalidate the assignment because the Iowa Insurance Commissioner has the sole authority to enforce that statute. State Farm responds that 33 Carpenters failed to preserve error on this issue because the district court never ruled on it and 33 Carpenters did not move under Iowa Rule of Civil Procedure 1.904(2) for an amended judgment deciding that issue.

"It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). To preserve error for appeal after the district court fails to rule on the party's properly raised issue, the party must file a motion requesting a ruling. *Id.* The party must "call to the attention of the district court its failure to decide the issue." *Id.* at 540.

> The claim or issue raised does not actually need to be used as the basis for the decision to be preserved, but the record must at least reveal the court was aware of the claim or issue and litigated it.

*Id.*

We routinely hold that when an issue is raised in a motion but not decided in the district court ruling, the issue is not preserved for review. *See, e.g., UE Local 893/IUP v. State*, 928 N.W.2d 51, 61 (Iowa 2019) (holding that error was not preserved on a ground raised in a motion to dismiss that the court denied on other grounds, and the party failed to raise the issue again in district court); *Bank of Am., N.A. v. Schulte*, 843 N.W.2d 876, 884 (Iowa 2014) (holding that error was not preserved for appellate review when the district court did not address the issue in its ruling and the parties failed to file a rule 1.904 motion on the issue); *Meier*, 641 N.W.2d at 540–41 (holding that the issue raised as one of two grounds in a motion to dismiss was not preserved for appellate review when the district court denied the motion on the other ground alone). In *Meier*, we determined that the issue raised in a motion to dismiss was waived when it was not decided in the district court ruling and the party did not file a motion requesting a ruling or do anything to call the district court's attention to the unaddressed issue. *Id.* at 540–41. 33 Carpenters arguably should meet the same fate for the same reason.

The district court granted summary judgment without expressly deciding whether the Iowa Insurance Commissioner has the sole authority to enforce Iowa Code chapter 522C. 33 Carpenters never filed a rule 1.904(2) motion requesting a ruling on that issue. We are a court of *review*, and we do not generally decide an issue that the district court did not decide first. *UE Local 893/IUP*, 928 N.W.2d at 60. But the district court must have *implicitly* rejected the argument when it granted summary

judgment based on Iowa Code chapter 522C. *See Meier*, 641 N.W.2d at 539 ("[W]e assume the district court rejected each defense to a claim on its merits, even though the district court did not address each defense in its ruling."). This is a recurring issue, and this argument was rejected by the district court and court of appeals in a companion case, *33 Carpenters v. Cincinnati Insurance Company*, No. 17–1979, 2019 WL 478254, at *5 (Iowa Ct. App. Feb. 6, 2019). We assume without deciding that error was minimally preserved here and elect to reach the merits in this opinion.

**B. The District Court's Power to Declare the Contract Void.** 33 Carpenters filed this civil action, and State Farm raised the defense that 33 Carpenters' assignment contract is void under Iowa Code chapter 522C. We have never held that Iowa courts lack the authority to adjudicate contractual assignments of insurance claims. To the contrary, "Iowa courts routinely adjudicate contract-formation and contract-enforcement issues." *UE Local 893/IUP*, 928 N.W.2d at 64. That case is instructive. There, we rejected a similar argument that the agency charged with enforcing a regulatory statute had primary jurisdiction over a contract enforcement action. *Id.* at 65. We noted that the agency had various enforcement powers, including imposing monetary penalties for violations, but the agency lacked statutory authorization to enforce the contract or declare the contract void. *Id.* Accordingly, we held the district court had the power to adjudicate the contract dispute without any requirement that the parties first exhaust administrative remedies. *Id.* at 65–66. Similarly, the insurance commissioner has the authority to impose penalties on a person acting as a public adjuster without a license, but nothing in the chapter authorizes the insurance commissioner to enforce contractual assignments or declare such contracts void. *See* Iowa Code ch. 522C; Iowa Code § 522C.6. We hold that the district court had the authority to

adjudicate the validity of 33 Carpenters' contractual assignment claims. *See also Bank of the W. v. Kline*, 782 N.W.2d 453, 462 (Iowa 2010) ("It is well-established Iowa law that contracts made in contravention of a statute are void, and Iowa courts will not enforce such contracts.").

### IV. The Invalidity of the Contract.

We must decide whether the district court erred by granting State Farm's motion for summary judgment. We conclude that undisputed facts establish that 33 Carpenters, a residential contractor, was acting as an unlicensed public adjuster representing the Clausens on their hail damage claim against State Farm. 33 Carpenters' contractual assignment is therefore void under Iowa Code section 103A.71(5), and State Farm was entitled to summary judgment.[3]

Our analysis turns on two statutes the Iowa legislature enacted in 2007 and 2012—Iowa Code chapter 522C, governing licensing of public adjusters, and Iowa Code section 103A.71, governing residential contractors. *See* 2007 Iowa Acts ch. 137, § 24–29 (codified at Iowa Code ch. 522C (Supp. 2007)); 2012 Iowa Acts ch. 1116, § 1 (codified at Iowa Code § 103A.71 (2013)). We begin with an overview of this legislation.

---

[3]The Iowa legislature recently enacted the Insured Homeowner's Protection Act, which now voids postloss assignment contracts between an insured and a residential contractor unless specified conditions are met. 2019 Iowa Acts ch. 49, § 1 (codified at Iowa Code § 515.137A(3), (5)(*a*) (2019)). This enactment became effective July 1, 2019. *Id.* State Farm does not argue this new legislation applies retroactively, and we conclude the enactment is inapplicable to the 2016 transactions at issue in this appeal.

Other states have recently enacted similar statutes regulating the insureds' postloss assignments to residential contractors of rights or benefits under homeowners insurance policies. *See, e.g.*, Neb. Rev. Stat. Ann. § 44-8605 (West, Westlaw current through 1st Reg. Sess. 106th Leg. (2019)); N.D. Cent. Code Ann. § 26.1-39.2-04 (West, Westlaw current through Jan. 1, 2020); *see also* Fla. Stat. Ann. § 627.7153 (West, Westlaw current through 2019 1st Reg. Sess.) (allowing insurers to restrict the ability of an insured to execute an assignment contract in its policies if certain enumerated conditions are met).

Iowa is one of forty-five states with statutes requiring licensure of public adjusters. *See* Thomson Reuters, *Public Adjusters: Licensing and Education Requirements*, 0110 Surveys 78 (Dec. 2018). The goal of the licensing statutes is to "curtail unethical and abusive practices" by public adjusters who "present[] danger to the public by 'chasing fires' and soliciting clients under conditions of duress." *Bldg. Permit Consultants, Inc. v. Mazur*, 19 Cal. Rptr. 3d 562, 570 (Ct. App. 2004). The unethical practices include "price gouging[,] . . . collusion[,] . . . high-pressure sales tactics, fraud, and incompetence." *Id.* at 571. Homeowners and their insurers are especially vulnerable to exploitation "in the wake of earthquakes, fires, floods, and similar catastrophes." *Id.* A recent report by the Insurance Information Institute concluded,

> In Florida, abuse of [assignment of benefits contracts (AOBs)] has fueled an insurance crisis. The state's legal environment has encouraged vendors and their attorneys to solicit unwarranted AOBs from tens of thousands of Floridians, conduct unnecessary or unnecessarily expensive work, then file tens of thousands of lawsuits against insurance companies that deny or dispute the claims. This mini-industry has cost consumers billions of dollars as they are forced to pay higher premiums to cover needless repairs and excessive legal fees. And consumers often do not even know that their claims are driving these cost increases.
>
> The abuse therefore acts somewhat like a hidden tax on consumers, helping to increase what are already some of the highest insurance premiums in the country.

James Lynch & Lucian McMahon, Ins. Info. Inst., *Florida's Assignment of Benefits Crisis: Runaway Litigation Is Spreading, and Consumers Are Paying the Price* 2 (March 2019).

State Farm argues such abuse is present here. After receiving the initial insurance payment for the repairs, 33 Carpenters prepared a supplement with an 81.3% increase in the total repair cost. Due to delays attributable to 33 Carpenters, all siding required replacement because

matching materials were no longer available. To reflect that, State Farm responded with its own substituted estimate and paid an additional sum to 33 Carpenters. Then, 33 Carpenters prepared yet another cost estimate for a 90.4% increase from State Farm's substituted estimate. State Farm refused to pay any additional sums.

The Iowa legislature specifically chose to regulate contracts "to repair damage [to homes] resulting from a naturally occurring catastrophe including but not limited to a fire, earthquake, tornado, windstorm, flood or hail storm." Iowa Code § 103A.71(4)(*a*) (2016). The Iowa Insurance Division has determined that requiring public adjusters to be licensed is in the public interest, necessary for the protection of policyholders, and consistent with the purposes of Iowa Code chapter 507A. *See In re Glaze Roofing & Remodeling*, Iowa Sec. Bureau Ins. Div., 2010 WL 2324606, at *2 (June 1, 2010). Iowa Code chapter 522C's purpose is "to govern the qualifications and procedures for licensing public adjusters in this state, and to specify the duties of and restrictions on public adjusters, including limitation of such licensure to assisting insureds only with first-party claims." Iowa Code § 522C.1.

Other courts have held that contracts entered into by an unlicensed public adjuster are void. *See, e.g.*, *Zarrell v. Herb Gutenplan Assocs., Inc.*, 444 N.Y.S.2d 39, 40 (Sup. Ct. 1981) ("Section 123 of the Insurance Law provides that no person shall act as an adjustor (independent or public) unless licensed by the Superintendent of Insurance. . . . Accordingly, the court declares that . . . the plain language of Sec. 123 prohibits the defendant's entitlement to a fee for adjusting a burglary loss . . . ."); *James R. Beneke, Inc. v. Aon Risk Servs., Inc. of Ga.*, A-05-CA-927 RP, 2007 WL 9701564, at *6 (W.D. Tex. Nov. 15, 2007) ("Because Jim Beneke was not licensed in Florida at the time of the solicitation, his conduct was

clearly prohibited under Florida law. The undersigned thus concludes the Agreement was void ab initio as violative of Florida law." (Footnote omitted.)); *Lon Smith & Assocs., Inc. v. Key*, 527 S.W.3d 604, 618, 619 (Tex. App. 2017) (refusing to enforce an unlicensed public adjuster's contract because "a contract to fulfill an obligation that cannot be performed without violating the law contravenes public policy and is void").

Against this backdrop, we turn to the operative statutory language. Subchapter V of the state building code, Iowa Code chapter 103A, is entitled, "Residential Contractors—Repairs and Insurance—Prohibited Practices." A "residential contractor" is defined as

> a person in the business of contracting to repair or replace residential roof systems or perform any other exterior repair, exterior replacement, or exterior reconstruction work resulting from a catastrophe on residential real estate or a person offering to contract with an owner or possessor of real estate to carry out such work.

Iowa Code § 103A.71(1)(*b*). "A contract entered into with a residential contractor is void if the residential contractor violates subsection 2, 3, or 4." *Id.* § 103A.71(5).

Section 103A.71(3) declares that

> [a] residential contractor shall not represent or negotiate on behalf of, or offer or advertise to represent or negotiate on behalf of, an owner or possessor of residential real estate on any insurance claim in connection with the repair or replacement of roof systems, or the performance of any other exterior repair, exterior replacement, or exterior reconstruction work on the residential real estate.

*Id.* § 103A.71(3). Violating section 103A.71(3) subjects the violator "to the penalties and remedies prescribed by this chapter" and amounts to "an unlawful practice pursuant to section 714.16." *Id.* § 103A.71(6)(*a*)–(*b*).

A "public adjuster" is defined in Iowa Code section 522C.2(7) as

> any person who for compensation or any other thing of value acts on behalf of an insured by doing any of the following:

*a.* Acting for or aiding an insured in negotiating for or effecting the settlement of a first-party claim for loss or damage to real or personal property of the insured.

*b.* Advertising for employment as a public adjuster of first-party insurance claims or otherwise soliciting business or representing to the public that the person is a public adjuster of first-party insurance claims for loss or damage to real or personal property of an insured.

*c.* Directly or indirectly soliciting business investigating or adjusting losses, or advising an insured about first-party claims for loss or damage to real or personal property of the insured.

*Id.* § 522C.2(7). A "person" can be an individual or business entity. *Id.* § 522C.2(6). Without a license issued by the commissioner in accordance with chapter 522C, "[a] person shall not operate as or represent that the person is a public adjuster in this state . . . ." *Id.* § 522C.4. A person acting as a public adjuster without a valid license commits a serious misdemeanor and is subject to civil penalties. *Id.* § 522C.6.

If we compare the language of section 103A.71(3), which lists activities that a residential contractor is forbidden from doing, with the definition of a public adjuster in section 522C.2(7), it is apparent that section 103A.71(3) prohibits residential contractors from acting as public adjusters.

Iowa Code § 103A.71(3).

A residential contractor shall not represent or negotiate on behalf of, or offer or advertise to represent or negotiate on behalf of, an owner or possessor of residential real estate on any insurance claim in connection with the repair or replacement of roof systems, or the performance of any other exterior repair, exterior replacement, or exterior reconstruction work on the residential real estate.

Iowa Code § 522C.2(7).

"*Public adjuster*" means any person who for compensation or any other thing of value acts on behalf of an insured by doing any of the following:

*a.* Acting for or aiding an insured in negotiating for or effecting the settlement of a first-party claim for loss or damage to real or personal property of the insured.

*b.* Advertising for employment as a public adjuster of first-party insurance claims or otherwise soliciting business or representing

to the public that the person is a public adjuster of first-party insurance claims for loss or damage to real or personal property of an insured.

*c.* Directly or indirectly soliciting business investigating or adjusting losses, or advising an insured about first-party claims for loss or damage to real or personal property of the insured.

(Emphasis added.) These statutes regulate the same conduct, including representing or negotiating for the insured on insurance claims for the costs to repair storm damage. The conduct prohibited in section 103A.71(3) governing residential contractors describes what public adjusters are licensed to perform pursuant to section 522C.2(7). We interpret these provisions together to hold that contracts entered into by a residential contractor acting as an unlicensed public adjuster are void under section 103A.71(5). *See Kline*, 782 N.W.2d at 462 (collecting cases holding courts will not enforce contracts that contravene statutes); *Milholin v. Vorthies*, 320 N.W.2d 552, 554 (Iowa 1982) (en banc) (upholding regulatory law invalidating a noncompliant real estate listing agreement).

It is undisputed that neither 33 Carpenters nor its employees held a public adjuster license. We next address whether 33 Carpenters acted as a public adjuster as defined in chapter 522C. Iowa Code section 522C.2(7) defines a "public adjuster" as a "person who for compensation or any other thing of value acts on behalf of an insured by doing *any* of the [three listed actions.]" (Emphasis added.) We consider each subsection in turn.

Section 522C.2(7)(*a*) states a person is a public adjuster when "[a]cting for or aiding an insured in negotiating for or effecting the settlement of a first-party claim for loss or damage to real or personal

(property of the insured." Iowa Code § 522C.2(7)(*a*). 33 Carpenters representative Shepherd directed the Clausens to file a claim with State Farm, which they promptly did that same day, and Shepherd attended the inspection of the Clausen property with the State Farm representatives in place of the Clausens. Shepherd's conduct aligned with 33 Carpenters' representations on its website, which advertised to homeowners that it would "meet personally with your insurance adjuster, as an ADVOCATE on YOUR behalf, and discuss the work that needs to be completed to repair your home to its original beauty and value." Additionally, 33 Carpenters submitted the first estimate to State Farm before the Clausens assigned their claim. 33 Carpenters thereby acted on behalf of the Clausens in negotiating their claim. Altogether, these activities demonstrate that 33 Carpenters was acting for and aiding the insureds, the Clausens, in effecting the settlement of their claim with State Farm for damage to their real property within the meaning of section 522C.2(7)(*a*).

Section 522C.2(7)(*b*) states a person is a public adjuster when acting on behalf of an insured for a thing of value by

> [a]dvertising for employment as a public adjuster of first-party insurance claims or otherwise soliciting business or representing to the public that the person is a public adjuster of first-party insurance claims for loss or damage to real or personal property of an insured.

*Id.* § 522C.2(7)(*b*). Section 522C.2(7)(*c*) states a person is a public adjuster when acting on behalf of an insured for a thing of value by "[d]irectly or indirectly soliciting business investigating or adjusting losses, or advising an insured about first-party claims for loss or damage to real or personal property of the insured." *Id.* § 522C.2(7)(*c*). Shepherd, as 33 Carpenters' representative, undisputedly approached the Clausens uninvited and offered to inspect their home for hail damage, and he directly solicited

business for 33 Carpenters after finding damage on the roof and siding. The same day, Shepherd advised the Clausens to file a claim for that damage and had them sign documents agreeing to pay 33 Carpenters with their insurance proceeds in exchange for the company agreeing to repair the storm damage. This constitutes advising an insured about first-party claims for damage to the insured's real property. 33 Carpenters' six-step process on its website additionally exemplifies solicitation of business investigating losses and advising insureds regarding claims with promises to "ADVOCATE on YOUR behalf" and work directly with the insurance company to ensure all damaged areas are included in the report, among other things. Such conduct directly aligns with that of a public adjuster within the meaning of sections 522C.2(7)(*b*) and (*c*).

Based on the undisputed facts in the summary judgment record, the district court correctly ruled that 33 Carpenters acted as an unlicensed public adjuster under section 522C.2(7), and the court correctly determined that the assignment contract was unenforceable under the governing statutes. We hold the assignment contract is void under Iowa Code section 103A.71(5).

This outcome is consistent with our precedent holding contracts entered into by parties lacking a required license are void as against public policy. *See, e.g., Bergantzel v. Mlynarik*, 619 N.W.2d 309, 318 (Iowa 2000) (en banc) (holding a contract entered into in violation of attorney license requirements was unenforceable); *Mincks Agri Ctr., Inc. v. Bell Farms, Inc.*, 611 N.W.2d 270, 271 (Iowa 2000) (en banc) (holding that contracts entered into by unlicensed grain dealer were unenforceable); *Keith Furnace Co. v. Mac Vicar*, 225 Iowa 246, 250, 280 N.W. 496, 498 (1938) ("If a statute or city ordinance prohibits the practice of a profession or the carrying on of a business without first procuring a license and a fine is imposed for

violating the law, recovery can not be had for services rendered in such occupation."); *Hoxsey v. Baker*, 216 Iowa 85, 88–89, 246 N.W. 653, 655 (1933) (stating it is "well settled" that a person cannot recover for services performed without a license as required by law); *see also Food Mgmt., Inc. v. Blue Ribbon Beef Pack, Inc.*, 413 F.2d 716, 725 (8th Cir. 1969) (applying Iowa law to hold contracts entered into in violation of Iowa registration requirements are unenforceable); *Davis, Brody, Wisniewski v. Barrett*, 253 Iowa 1178, 1181–82, 115 N.W.2d 839, 841 (1962) ("The general rule appears to be that a contract made in the course of a business or occupation for which a license is required by one who has not complied with such requirement is unenforceable where the statute expressly so provides, or where it expressly or impliedly, as a police regulation, prohibits the conduct of such business without compliance."). The legislature has codified its expression of public policy in Iowa Code section 103A.71(5), and we rely on that statute to affirm the summary judgment.

## IV. Disposition.

For the foregoing reasons, we affirm the district court's summary judgment against 33 Carpenters.

**AFFIRMED.**