SMITH v. AMERICAN PACKING & PROVISION CO.

No. 6467. Decided November 10, 1942. (130 P. 2d 951.)

352

■■■■■■■■■■■■■■■

See 6 C. J. S., Architects, sec. 5; 33 Am. Jur., 352 et seq.

*Mulliner, Prince & Mulliner,* of Salt Lake City, for appellant.

*DeVine, Howell & Stine* and *Neil R. Olmstead,* all of Ogden, for respondent.

McDONOUGH, Justice.

This case comes here on appeal from a judgment in favor of defendant and respondent. On the theory that the alleged engineering services set forth in the amended complaint actually constituted the unlicensed practice of architecture, the lower court sustained a demurrer thereto without granting plaintiff permission to amend; and the court entered judgment on demurrer whereby the action was dismissed. The questions presented by this appeal relate principally to the interpretation of the statutes pertaining to the licensing of architects and engineers and the scope of the professions of architecture and engineering. The purpose and intent of the statutes have a direct bearing on the questions regarding the sufficiency of the allegations of the amended complaint.

The amended complaint contains two causes of action. The essential allegations in the first cause of action are:

"That plaintiff is a resident of the City and County of San Francisco, State of California, being a duly licensed professional and structural engineer of said City, County and State."

That about January 14, 1931 [1939?] at San Francisco, the defendant's representatives asked plaintiff to furnish

"preliminary information and aid regarding the rearrangement of the killing floor and fancy meat department of defendant's packing plant in Ogden, Utah, the information and aid being sought with the view toward increasing defendant's hog kill from 65 hogs per hour to 150 hogs per hour, and also increasing defendant's sheep kill from 90 sheep per hour to 150 sheep per hour, the same equipment to be used for both hogs and sheep but only one species to be dressed at one time, and the said rearrangement to pass the inspection, meet the approval, and conform to the standards set up by the Federal Bureau of Animal Industry in Washington, D. C."

That at the request of defendant, plaintiff on or about January 15, 1939,

"commenced drafting preliminary plans and designs for the contemplated changes and additions necessary to meet the Bureau of Animal Industry requirements; that plaintiff worked on said preliminary plans and designs until on or about January 21, 1939, when the said plans and designs having been completed, the same were delivered to the defendant corporation."

That about July 17, 1939, plaintiff came to Ogden at the request of defendant and about July 21, 1939, defendant corporation "entered into an agreement employing plaintiff as professional engineer for the furnishing, preparation and drawing of the plans, designs, details and specifications necessary in order to obtain the Bureau of Animal Industry's approval of the proposed change in defendant's killing floor and fancy meat department"; that it was agreed that if defendant went to Washington to expedite approval of the plans, defendant would pay $350 plus all transportation and other expenses; that plaintiff prepared the plans

and designs and at the request of defendant went to Washington where the proposed changes were approved by said bureau as a result of the efforts of plaintiff.

Plaintiff further avers in substance that he agreed to serve and act as professional and construction engineer, to prepare and furnish all necessary working plans and designs and assist with personal partial supervision in the construction and erection of the changes when requested by defendant, for which services defendant agreed to pay plaintiff six per cent of the total costs of work, labor and materials necessary to complete the changes to the killing floor and fancy meat department, the $350 fee to be canceled and no commission to be allowed on the equipment to be purchased by defendant from Cincinnati Butchers Supply Company for which Company, plaintiff was acting as sales representative; and in addition thereto defendant was to pay the living expenses of plaintiff while in Ogden and also his traveling expenses from San Francisco and return. The said agreement (or supplemental agreement) was allegedly made September 13, 1939, at Ogden, Utah.

"6. That thereafter, pursuant to said agreement, and on or about October 11, 1939, plaintiff returned to Ogden, Utah, and worked in said city until October 26, 1939, at which time plaintiff returned to San Francisco to again return to Ogden, Utah, on December 4, 1939, and work there until December 23, 1939, on the construction and supervision of defendant's plant changes and plaintiff fully performed and completed his terms of the agreement so made between plaintiff and defendant and such changes were made, accepted and placed by defendant in operation.

"7. That the plaintiff's practice of engineering in the State of Utah did not exceed in the aggregate more than sixty (60) days in the calendar year 1939; that plaintiff is legally qualified by registration to practice the said profession of engineering in his own state, (to wit: California) and that the requirements and qualifications for obtaining a certificate of registration in California are not lower than those specified in Chapter 79, Section 16, Laws of Utah 1935.

"8. That the total cost of said changes and rehabilitation to defendant's killing floor and fancy meat department was $56,962.07; that of this amount $17,697.00 was expended on equipment purchased from the Cincinnati Butchers Supply Company, leaving a balance of $40,-

265.07 upon which plaintiff's agreed fee of 6%, or $2,421.90 was justly due and owing plaintiff; that of this amount plaintiff has received from defendant $1,000.00, leaving a sum of $1,421.90 now due and owing from defendant to plaintiff; that although demand has been made upon defendant for said sum defendant has failed and does now fail and refuse to pay said sum or any part thereof."

The second cause of action incorporates by reference paragraphs 1 to 7 of the first cause of action, and it is further alleged that about September 19, 1939, defendant separately employed plaintiff as a professional engineer to submit a report, together with plans and designs, in order that "defendant's entire packing plant might be correlated, improved and made more efficient in conjunction with the rehabilitation work contemplated to be done to the killing floor and fancy meat department, defendant agreeing to pay therefor the reasonable value of such engineering services"; that plaintiff performed the services, submitted a report and plans and designs; that the sum of $500 is a reasonable charge, for which demand has been made, but defendant has failed and refused to pay said sum or any part thereof.

In sustaining the demurrer, the lower court based its ruling in part on the premise that services performed by plaintiff as alleged in the complaint, constituted the practice of architecture and that no recovery could possibly be had by plaintiff. Both the court and counsel for defendant expressed the view that even if the services of plaintiff could properly be classified as engineering functions, they involved several distinct types of work which are phases of the practice of architecture. They then concluded that if certain engineering activities, such as making plans and designs of a building, constitute services which are performed or which may be performed by architects, plaintiff had no legal right to perform such services for a fee without having a license as an architect.

If a person is licensed to practice in the entire field of professional engineering, and such field necessarily includes

some practices or activities which are also common to the field of architecture, does it follow that such professional engineer must also have a license as an architect to perform engineering activities which might also be performed by architects? We think not, unless statutes relating to registration and license manifest such an intention.

The mere fact that a licensed profession extends in some degree into the field of some other licensed occupation, does not require the licensee to have a license in each of the fields into which his profession may overlap, unless the statutes impose such requirement. If a person had to have a license in each field into which his chosen profession or calling might overlap in some degree, he might not only have to obtain numerous licenses in different fields to engage in the field in which he is specially trained and qualified, but he might be prevented from engaging in the field in which he is particularly well qualified for the reason he could not meet all of the qualifications for license in other fields.

In the final analysis we must examine the statutes which relate to registration and licenses as applied to architects and engineers, to ascertain if the Legislature manifested any intention that an engineer who performs services in his field of engineering must have a license as an architect if such services may also be performed by a licensed architect. Title 79, R. S. U. 1933, has reference generally to licenses issued by the Department of Registration for engaging in certain businesses or professions. Section 79-1-38 provides:

"It shall be unlawful for any person to practice or engage in or attempt to practice or engage in any profession, trade or occupation that may be subject to the department of registration without authority so to do as in this title provided   *   *   *."

Chapter 3 of Title 79 relates to architects, and the first two sections of the chapter deal with applicants for license to practice architecture, and requirements and examination of applicants for license:

"The examination shall have special reference to the construction of buildings, and shall test the knowledge of the applicant as to the strength of materials and his ability to make practical application of such knowledge in the ordinary professional work of an architect and in the duties of a supervisor of mechanical work on buildings, and it shall test his knowledge of the laws of sanitation as applied to buildings."

## Section 79-3-6 defines the practice of architecture:

"Any person shall be regarded as practicing architecture within the meaning of the provisions of this title who shall plan or supervise the erection, enlargement or alteration of any building for another after having received, or with the intent to receive therefor, either directly or indirectly, any fee, compensation or other pecuniary benefit or consideration; or who shall hold himself out by means of signs, cards, advertisement or otherwise as an architect * * *."

Chapter 79, Laws of Utah 1935, provides for registration of professional engineers and land surveyors, and Section 17 specifies that

"This act shall not be construed to affect or prevent the practice of any other legally recognized profession." Section 18 provides: "The general provisions of title 79, Revised Statutes of Utah, 1933, shall be applicable to the administration and enforcement of this act, in so far as they are not in conflict herewith."

Section 11 of the latter act provides for examinations to determine qualification of applicants for license as professional engineers and land surveyors, and it specifies in particular:

"* * * The scope of the examinations and the methods of procedure shall be prescribed by the committee with special reference to the applicant's ability to design and supervise engineering works, which shall insure the safety of life, health and property. * * *"

Section 2 of the 1935 statute defines the terms "professional engineer" and "professional engineering" as follows:

" 'Professional engineer' shall mean a person who, by reason of his knowledge of mathematics, the physical sciences, and the principles

of engineering, acquired by professional education and practical experience, is qualified to engage in engineering practice as hereinafter defined.

" 'Professional engineering' includes any professional service, such as consultation, investigation, evaluation, planning, design, or responsible supervision of construction or operation, in connection with any public or private utilities, structures, buildings, machines, equipment, processes, works or projects, wherein the public welfare, or the safeguarding of life, health or property is concerned or involved, when such professional service requires the application of civil, electrical or mechanical engineering principles and data."

Section 9 of this act specifies the educational attainments and experience in the engineering field required for obtaining a license as a profession engineer. Section 16 provides exemptions which include the following:

"The following persons shall be exempt from the provisions of this act, to wit:

"(a) A person not a resident of and having no established place of business in this state, practicing or offering to practice herein the profession of engineering or land surveying, when such practice does not exceed in the aggregate more than sixty days in any calendar year; provided, such person is legally qualified by registration to practice the said profession in his own state or country in which the requirements and qualifications for obtaining a certificate of registration are not lower than those specified in this act."

Respondent cites the following provision of the ■ 1935 statute (§ 17):

"This act shall not be construed to affect or prevent the practice of any other legally recognized profession";

and then interprets it to mean that if engineering practice overlaps with the field of architecture, a license for practicing architecture must be obtained. Appellant, on the other hand, contends such provision does not warrant the interpretation urged by defendant, and states that the provision stressed by respondent must be read in connection with Section 18 which specifies that

"The general provisions of title 79, Revised Statutes of Utah, 1933, shall be applicable to the administration and enforcement of this act, in so far as they are not in conflict herewith."

Certainly section 17 is not intended to operate to defeat the act of which it is a part. It merely indicates that other professions and occupations previously subject to license shall remain so. It does not state that if the activities of one licensed profession overlap with some activities within the scope of some other licensed profession, that as to those activities in common a person performing them must be licensed in both fields or professions.

In *Buckle* v. *Ogden Furniture & Carpet Co.*, 61 Utah 559, 216 P. 684, 685, this court said:

"But it is not to be presumed that the Legislature would enact a vain and meaningless statute. We conceive it to be our duty, if possible, to adopt that interpretation which will give effect to each provision and harmonize them with each other, so that neither will be meaningless."

See also, *Western Beverage Co.* v. *Hansen*, 98 Utah 332, 96 P. 2d 1105. As enunciated in *Smith* v. *Lenzi*, 74 Utah 362, 279 P. 893, 895,

"Where two statutes can be so construed as to allow both to stand, that construction will be adopted."

These statutes relating to licensing of architects and the later enactment providing for licensing of professional engineers, clearly indicate by their definitions of terms that the two professions have certain functions which are common to each other. The statutory definitions of "architecture," "professional engineer" and "professional engineering" indicate that the making of plans and designs as well as supervision of construction, are activities more or less common to both fields. It is only natural that these two professions which are related in some particulars,

have at least some activities in common and to that degree overlap.

The purpose of the statutes relating to registration and license is not to establish unreasonable barriers or boundaries between professions and occupations subject to license, but to insure the public against imposition by persons who are not qualified by training and experience to render successfully and efficiently the services they offer to perform for compensation.

These statutes construed together, in our opinion, do not contemplate that a professional engineer who performs some service in his own field in which he is duly licensed, such as making plans and designs in connection with an engineering problem or project, shall have to procure a license as an architect merely because the particular engineering activities necessitate the making of plans and designs, or require supervision in construction, which might also be embraced within the scope of the functions of an architect. However, we do not say that professional engineers can make plans for all kinds of buildings or do whatever an architect can do, for clearly the entire field of architecture is not embraced within the field of professional engineering as defined by statute.

As we interpret the statute for licensing of professional engineers, the field of professional engineering involves the making of plans, designs and the supervision of construction; but we believe such plans, designs and supervision must all relate to engineering problems, projects or undertakings. The making of plans and supervision of construction must be related to the engineering objectives to be accomplished. The statute does not contemplate that an engineer can make plans and designs and supervise the construction of any and every type of building. Nor does it require by express terms or by implication, that if a licensed engineer draws plans and makes designs in connection with some construction engineering problem or project, that he shall have to procure a license as an archi-

tect merely because such plans and designs might also be prepared with equal propriety by an architect.

There can be no successful engineering achievements without plans, designs, specifications, methods of construction, and proper supervision; but this fact does not mean that professional engineers should be permitted to go beyond the field of engineering and make plans and designs for every kind of building or structure. While it is not practicable to draw a line of demarcation between the field of professional engineering and architecture, the statutes indicate that the plans, designs and supervision by professional engineers should be essential phases of the development and accomplishment of an actual engineering problem or project or other engineering undertaking.

. The real criterion for determining if a licensed professional engineer must also have a license as an architect, is not whether some service he performs might be performed lawfully by an architect, but whether such functions are necessarily embraced within the scope of engineering covered by his license. The issuance of a license in one field is not to be employed as a stepping stone to practice in some other field or even in a part of such other field, unless the functions of such other field performed by the licensee are necessarily embraced within the scope of the activities authorized by the license.

It is common knowledge that some professional engineers prepare certain types of plans and designs of structures, and that they also supervise certain construction which architects ordinarily do not perform. For instance, engineers frequently design and plan as well as supervise the construction of dams, power plants, factories, mills and other structures adapted entirely to the use or operation of certain types of machinery or specialized equipment. It depends upon the particular facts of a case whether the preparation of plans and supervision of construction are so far in the field of architecture or not necessarily connected with an engineering project, that a li-

censed engineer should not attempt to perform such services without also having a license as an architect.

The assembling of machinery and equipment and its proper coordination in the operation of a packing plant, appears to be in the field of engineering. It involves problems of public health, sanitation, and efficient and economical production. The defendant contends that ■ in this case the allegations show plaintiff was engaged in preparing plans, and supervising the work of remodeling the killing floor and fancy meat department, which involved the remodeling of the building itself, and that such work is in the field of architecture.

According to the allegations of the amended complaint, the purpose of employing plaintiff was to rehabilitate the killing floor and fancy meat department, to increase the hog-kill from 65 to 150 per hour and the sheep-kill from 90 to 150 per hour by the same facilities. It can ■ not be said that such an undertaking is necessarily exclusively or primarily in the field of architecture. The increase of production by correlation of machinery and equipment, and the arrangement of plant facilities to provide more economical and efficient production, fundamentally are not phases of architectural practice, but problems in engineering.

As to whether the changes in structure of the building itself were in fact merely incidental to the general program for the reorganization of the plant facilities and the rearrangement of the machinery and equipment, or ■ actually constituted a separate undertaking such as ordinarily would be performed by an architect, would involve determination of a question of fact which cannot be ascertained from the allegations of the amended complaint. If the changes to the building were merely those necessary to accommodate the rearrangement and reorganization of plant equipment and facilities, to correlate plant operations to insure increased production, it might well be that the plaintiff was acting within the scope of professional engineering practice. We do not believe plaintiff pleads his

services out of the field of engineering and into the field of architecture.

The respondent also contends that because plaintiff was a nonresident he would have to obtain a license if the services he performed in this state were of the character which architects might perform. We do not believe there is any merit to such proposed interpretation of the statute. At the time the Legislature enacted the statute relating to registration and licensing of professional engineers, it appears there was a recognition of the fact that people and institutions in this state sometimes require the services of specialists in engineering fields who might have residence elsewhere; and that if such services are for brief periods of time it would be to the benefit of the public and particularly to the benefit of those seeking such services to permit such nonresident engineers who are licensed elsewhere under acceptable standards of efficiency, to render services in this state without the delay involved in securing a license here. It is quite possible that considerable inconvenience would result to persons requiring such special services if a nonresident engineer specializing in a particular branch or technique of engineering, would have to go through the formality of procuring a license in this state to perform such services for a very brief period of time, when such engineer has already proved his ability and has established his qualifications with a licensing department in another state whose requirements are not inferior to our own.

In this case, if plaintiff was licensed as a professional engineer in a state in which the qualifications for registration were not lower than those of Utah, at the time he performed the services, he would be entitled to recover any sums due him for engineering services if he did not extend his practice beyond the statutory period of sixty days. If such part of the plans and supervision which relate to the remodeling of the building, were inseparably connected with and incidental to the reorganization of the plant facilities and equipment, and such plans for remodeling of the building

and supervision of the remodeling are generally made and performed by professional engineers in connection with the reorganization of plant facilities and rearrangement and correlation of machinery and equipment for increased production, the plaintiff would not have gone outside the field of engineering and into the field of architecture.

If plaintiff did go outside his own field in which he was licensed, that should not preclude recovery for such services which he actually performed, if any, in the field of engineering, provided those services are severable and can be separately identified.

Although the complaint might have been drafted to allege more clearly that the remodeling of the building was necessarily connected with the rearrangement of the machinery and equipment of the plant to come entirely within the field of engineering, we do not think the amended complaint is fatally defective for such omissions, and we do not believe it pleads the services into the field of architecture. The amended complaint, except for the defects hereinafter specified, alleges sufficient facts as to engineering services to permit proof of performance of those services.

Defendant and respondent also claims that paragraph 7 of the complaint constitutes a conclusion of law, and that plaintiff should have specified what were the requirements for registration and license in California, and that he should have pleaded the California statute. However, the complaint indicates that it is not founded on the California statute, but that recovery is sought in Utah under the Utah statute. It could hardly be urged that plaintiff must plead all the evidence he would introduce as to the registration requirements in California to show that the standards and requirements in that state are not lower than in Utah. To do so might result in having voluminous pleadings contrary to the intent of our code which requires pleadings to be in ordinary and concise language. We believe a general allegation to show plaintiff came within the

exception would be sufficient, if it related specifically to the time when the services were performed.

Appellant contends that all of the matters raised by defendant constitute matters of defense which plaintiff does not have to negative. However, the general rule is that where a person seeks recovery for professional services for which a license is required as a condition precedent to the rendition of such services for a fee, such person must allege and prove facts, which show he was licensed at the time such services were performed or that he was exempted from the class required to have such license. *Westbrook* v. *Nelson*, 64 Kan. 436, 67 P. 884; *Swift* v. *Kelly*, 63 Tex. Civ. App. 270, 133 S. W. 901; *Hoxsey* v. *Baker*, 216 Iowa 85, 246 N. W. 653. The facts as to license and qualifications for performing professional services are almost without exception better known to the person holding such a license than to the adverse party. It might be extremely difficult for a person defending an action based on alleged professional services to negative the existence of a license or show that claimant does not come within the exceptions of the statute.

We now direct our attention to allegations contained in paragraphs 1 and 7 of the amended complaint which constitute defects of the same general character found in many other pleadings, and which render the amended complaint vulnerable to general demurrer.

Paragraph 1 alleges that plaintiff is a resident of California and a duly licensed professional and structural engineer in said state; but it is not alleged anywhere in the amended complaint that he was a licensed professional engineer at or during the time he performed the services for which he seeks compensation by this action. The mere fact that plaintiff had a license at the time he filed suit would be wholly immaterial, if he had no license at the time he performed the services, for the reason the license is essential to qualify the professional engineer to render service for a professional fee.

Paragraph 7 likewise alleges that plaintiff is legally qualified by registration to practice the profession of engineering in California, and that the requirements and qualifications for obtaining a certificate of registration in that state are not lower than those specified in our own ■ statute; but there is no allegation to the effect that plaintiff was a professional engineer or registered or qualified as such in California at the time the services were performed, or that at said time the requirements and qualifications in that state were not lower than in this state.

The defects which we have mentioned are not discussed by either the lower court in the memorandum ruling on demurrer or in the brief of respondent. They are matters which ordinarily can be corrected by amendment at any time prior to judgment without prejudice to the ■■ opposing party. In view of the fact the amended complaint is deficient in essential allegations, we would be compelled to uphold the judgment of the district court if the court had merely sustained the demurrer and had not denied the plaintiff leave to amend. A ruling which is correct will be upheld even if the reasons given for such ruling are erroneous. In this case, the ruling sustaining the demurrer was correct, but the reasons were erroneous, and on the basis of such erroneous reasons the court denied plaintiff an opportunity to amend and granted judgment to defendant in the ruling on demurrer.

The judgment of dismissal is therefore reversed, and the cause is remanded to the district court with directions to enter an order vacating the judgment, and to enter an order sustaining the demurrer to the amended complaint, but to grant plaintiff and appellant leave to amend, and if plaintiff shall fail to amend or to file an amended pleading, judgment of dismissal of the action shall then be entered.

Costs to appellant.

WOLFE and LARSON, JJ., and WADE, District Judge, concur.

MOFFAT, C. J., concurs in the result.

PRATT, J., on leave of absence.