**The DAHLEM CONSTRUCTION COMPANY et al., Appellants,**

**v.**

**STATE BOARD OF EXAMINERS AND REGISTRATION OF ARCHITECTS of Kentucky, Appellee.**

Court of Appeals of Kentucky.

June 12, 1970.

Rehearing Denied Nov. 27, 1970.

William P. Curlin, Jr., Hazelrigg & Cox, Frankfort, Samuel Manly, III, Louisville, for appellants.

John B. Breckinridge, Atty. Gen., Ben B. Fowler, Frankfort, for appellee.

DAVIS, Commissioner.

The issue at bar is whether The Dahlem Construction Company, a corporation, and its principal owners, appellants Joseph C. Dahlem and Bernard A. Dahlem, have illegally engaged in the practice of architecture contrary to KRS Chapter 323. The trial court adjudged that they had engaged in architecture and issued a permanent injunction prohibiting their so doing in the future. By this appeal that judgment is assailed.

Both Joseph C. Dahlem and Bernard A. Dahlem hold Kentucky licenses as Professional Engineers. KRS 322.040. The Dahlem Construction Company is a well-established, reputable building company. The corporation has no engineering or architect's license. (KRS 322.060 forbids a company's holding an engineer's license.) Neither of the Dahlems had an architect's license as prescribed by KRS Chapter 323.

The parties stipulated that The Dahlem Construction Company erected a building in Jefferson County designed to be used as a 78-bed nursing home containing approximately 18,000 square feet. The plans and specifications for the building were prepared by appellant Bernard A. Dahlem and stamped with his seal and license number as a professional engineer. Joseph

C. Dahlem, as Chairman of the Board of The Dahlem Construction Company, participated in the entire project.

The appellee, State Board of Examiners and Registration of Architects of Kentucky, instituted this action pursuant to KRS 323.250 seeking to enjoin alleged illegal practice of architecture and asking for a declaration of rights pursuant to KRS 418.040. The appellants, defendants in the trial court, insist that their professional services in preparation of plans and specifications for the nursing home were legally permissible within the ambit of KRS Chapter 322 relating to professional engineers.

KRS 322.010(2) defines an "Engineer" as follows:

"'Engineer' means a person who is qualified by reason of his knowledge of mathematics, the physical sciences and the principles of engineering, acquired by professional education and practical experience, to engage in the practice of professional engineering."

Engineering is defined by KRS 322.010(3) in this language:

"'Engineering' includes any professional service, such as consultation, investigation, evaluation, planning, design or responsible supervision of construction or operation, in connection with any public or private utility, structure, machine, equipment, process, work or project with which the public welfare or the safeguarding of life, health or property is concerned, when such professional service requires the application of engineering principles and data. It does not include the work ordinarily performed by persons who operate or maintain machinery or equipment, such as locomotive, stationary, marine or power plant operators, nor work embraced within the practice of land surveying."

KRS 322.370 tersely provides:

"This chapter shall not prevent a licensed engineer from carrying on any architectural practice incident to the practice of engineering."

An inspection of pertinent provisions of KRS Chapter 323, relating to architects, is necessary.

In defining the "practice of architecture" KRS 323.010(3) and (4) provide:

"(3) The 'practice of architecture' consists of performing or offering to perform any professional service involving consultations, planning, designing, specifying, responsible supervision or administration of the construction of any building or additions or alterations thereto;

"(4) A 'building' is a structure erected as a shelter for human beings, their activities and possessions."

KRS 323.030 enumerates some exceptions to the requirement for use of an architect's services, but appears to specifically demand that an architect's professional skill be utilized in certain cases, particularly including "nursing or convalescent home(s)."

Some of the pertinent provisions of KRS 323.030 are:

"(3) A licensed professional engineer may prepare plans and specifications for and supervise the construction of structures as an incident to the practice of his own profession."

"(4) If the drawings and specifications are signed by the authors thereof with the true titles of their occupations as may be required by law, this chapter does not apply to:

(a) Any building which is to be used for farm purposes only;

(b) Any building containing not more than 20,000 square feet total floor area, *except*:

1. An asylum, hospital, nursing or convalescent home, or home for the aged, regardless of capacity; * * *." (Emphasis added.)

The litigants have supplied informative briefs, citing several domestic and foreign decisions as well as text authorities. For example, see Heron v. City of Denver, (1955), 131 Colo. 501, 283 P.2d 647; Lehmann v. Dalis, (1953), 119 Cal.App.2d 152, 259 P.2d 727; Smith v. American Packing & Provision Co., (1942), 102 Utah 351, 130 P.2d 951; 5 Am.Jur.2d, Architects, Section 3, p. 665; State v. Beck, Inc., (1960), 156 Me. 403, 165 A.2d 433. Without belaboring the matter further, it suffices to note that the legislative bodies, the courts, and the text writers recognize that some degree of "overlap" prevails in the practice of the professions of architecture and engineering. The just-quoted portions of KRS Chapters 322 and 323 pointedly recognize that an "overlap" may properly exist between the two professions.

It is significant that KRS 322.370 and KRS 323.030(3) recognize the right of an engineer to perform architectural functions only *as an incident* to the practice of engineering. Of further significance is the explicit requirement for architectural skill as relates to any "asylum, hospital, nursing or convalescent home, or home for the aged, regardless of capacity."

It is true, as suggested by appellants, that KRS 322.010(3) empowers engineers to render their professional services for "structures." We agree that a nursing home is a "structure." But, a "building," as defined by KRS 323.010(4), is a "structure" of a particular kind—one "erected as a shelter for human beings, their activities and possessions."

It seems clear that the Dahlems were not performing services "incident to the practice of engineering" in drawing the preliminary plans and specifications for the nursing home. Indeed, the project might never have proceeded beyond the design phase. We suppose it may not be seriously debated that the design and its aesthetic phases were architectural only. There was nothing "incident" to the practice of engineering encompassed in formulating the aesthetic design of the nursing home or in adapting it to the topography so as to attain the maximum artistic effect. Those functions were peculiarly within the expertise of the trained architect.

To follow the contentions of the appellants would be to declare that all engineers are architects and vice versa. If the General Assembly had intended that to be so, it would not have been at such pain in carefully noting in both KRS Chapters 322 and 323 that the "overlap" permitted to the professions is authorized only when it is "incident" to the basic profession. It is our conclusion that the trial court properly determined the controversy.

The judgment is affirmed.

EDWARD P. HILL, Jr., C. J., and MILLIKEN, NEIKIRK, PALMORE, and REED, JJ., concur.

STEINFELD, J., not sitting.

OSBORNE, J., dissents.