ATLANTIC MUTUAL INSURANCE COMPANY, A CORPORA-
TION AUTHORIZED TO TRANSACT INSURANCE BUSI-
NESS IN THE STATE OF NEW JERSEY, PLAINTIFF, v.
CONTINENTAL NATIONAL AMERICAN INSURANCE
COMPANY, A CORPORATION AUTHORIZED TO TRANS-
ACT INSURANCE BUSINESS IN THE STATE OF NEW
JERSEY, DEFENDANT.

Superior Court of New Jersey
Law Division

Decided February 26, 1973.

*Mr. Vincent D. Enright, Jr.,* for plaintiff (*Messrs. Enright, Bright & Saviet,* attorneys).

*Mr. John B. Stone, Jr.,* for defendant (*Messrs. Ryan, Saros, Davis & Stone,* attorneys).

DEMOS. J. S. C. This is a declaratory judgment action to decide which of two insurance carriers is responsible for a

previously agreed upon settlement. In *Victor Gortfai v. Elson T. Killam Associates, Inc. v. Ernest Renda Construction Co.*, (L-16594-68) and *Columbus Glenn v. Elson T. Killam Associates, Inc. v. Ernest Renda Construction Co.*, (L-27168-68), the two insurance carriers for Killam Associates, Atlantic Mutual Insurance Co. and Continental National American Insurance Co., agreed that one of them would compensate plaintiffs Gortfai and Glenn a total of $68,500. Since each carrier denied coverage under its policy, it was agreed that the issue of responsibility be decided by the court upon a stipulation of the essential facts.

On November 13, 1961, Killam Associates, a professional engineering firm, entered into a contract with the Township of Green Brook under which it agreed to "furnish general supervision of the work of the contractor as the construction progresses, to assist in a correct interpretation of the plans and specifications and to safeguard the Township against defects and deficiencies on the part of the contractor."

On August 16, 1967 the Ernest Renda Contracting Company, Inc., was the contractor performing the sewer work referred to under defendant's contract with the township. On that day Victor Gortfai and Columbus Glenn, two employees of the Ernest Renda Contracting Company, were injured when the sewer trench in which they were working collapsed. As a result of this accident both men instituted suit against both Killam Associates and the Ernest Renda Contracting Company.

Paragraph 3 of the Gortfai complaint and paragraph 6 of the Glenn complaint charged that Killam Associates "negligently and carelessly supervised, controlled and directed" the work of the contractor, thereby proximately causing their injuries. Plaintiffs' factual and legal contentions as set forth in the pretrial order alleged that defendant Killam Associates maintained a supervisory engineer at the job site and was therefore in actual control of the work being done. That Killam Associates through its employees, in opposition to a safe method of bracing the trench, ap-

proved the use of a steel cage device to protect workers in the excavation. The route taken for excavation did not permit sufficient area for storage of the dirt removed, creating a dirt mound 18' high close to the slope of the trench. Plaintiffs asserted that "despite these indications of cave-in likelihood and absence of sound engineering practice, Killam, through its employees and agents, permitted plaintiffs * * * to descend into the excavation to perform labor."

The bracing used in the trench violated the New Jersey Construction Safety Code and it was the express responsibility of Killam Associates to advise the township of any such deviation.

It was this violation, coupled with the daily log of Jubanowsky, Killam's employee at the job site, which contained numerous notations on the safety of the cut that apparently caused defendants to seek a settlement on November 9, 1971. As stated, the total settlement was for $68,500, said amount to be paid by which ever insurance company was found by adjudication to be responsible by way of insurance coverage.

It is stipulated that all times material, plaintiff Atlantic Mutual Insurance Co., had issued to Elson T. Killam Associates, Inc. a comprehensive general liability insurance policy. It is also agreed that defendant Continental National American Ins. Co. had issued to Elson T. Killam Associates, Inc. an Architects and/or Engineers' Professional Liability Policy.

The Atlantic Mutual policy contains two clauses which are important to the instant controversy. It contains a "pro rata" clause under the title "other insurance" as follows:

If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of libality stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

It also contains an endorsement dated September 10, 1965, headed "Exclusion of Malpractice and Professional Services" as follows:

It is agreed that as respects any classification stated above [Architect and Engineering, Draftsman] or designated in the policy as subject to this endorsement, the policy does not apply to injury, sickness, disease, death or destruction due to the rendering of or failure to render *any professional service.* [Emphasis added]

The Continental National American policy also contains two pertinent clauses: (1) an "Excess" clause which reads:

This policy is in excess of all other vaild and collectible insurance and shall not be called upon in contribution.

and (2) a "Professional Errors and Omissions Clause" which states:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages if **legal liability** arises out of the performance of *professional services* for others in the insured's capacity as an architect or an *engineer* and if such legal liability is caused by an error, omission or negligent act. [Emphasis added]

Defendant argues in view of the excess clause in the Continental National American policy and the pro rata clause in the Atlantic Mutual coverage that if both policies cover the acts or omissions allegedly committed by Killam Associates, Atlantic Mutual would be responsible for the full $68,500. In support thereof defendant cites *First Ins. Co. of Hawaii, Ltd. v. Continental Cas. Co.,* 313 *F. Supp.* 808, 814 (D. Ct. Hawaii, 1970).

In situations where one policy contains a pro rata clause, and the other an excess clause, the excess clause governs and the insurer under the excess clause is not liable until the company having the pro rata clause has paid to the extent of its policy liability. *Travelers Ins. Co. v. Peerless Ins. Co.,* 287 *F.* 2d 742, 748 (9 Cir. 1961); *General Accident Fire and Life Assur. Corp., Ltd. v. Continental Cas. Co.,* 287 *F.* 2d 464, 467 (9 Cir. 1961).

This court finds, and plaintiff concedes, that if both policies cover the cause of action against Killam Associates, that plaintiff Atlantic Mutual must pay the full amount.

The key question is whether the alleged acts of Killam Associates were in the nature of professional services specifically excluded under the Atlantic Mutual Policy. There is no question that the Continental National American policy covers such professional services.

Continental National American argues that noncompliance with the safety code and the failure to report this violation were nonprofessional acts. Defendant's sole support for this point is *First Ins. Co. of Hawaii, Ltd. v. Continental Cas. Co., supra.* The facts in that case are somewhat similar to those here. The original defendant in *First Ins. Co.* was covered by both general comprehensive and professional liability insurance policies. Defendant negligently supervised the grading of soil, which resulted in a cave-in and injuries to workers in a trench. The court therein found that the general policy as well as the professional liability policy covered defendant's negligent acts. However, that decision is cleraly distinguishable. The allegations in that case charged general negligence — not a specific safety code violation. The court made its findings on the ground that defendant's acts did not fall within any of the specific exclusions contained in the general comprehensive policy. Rather than excluding any professional act, as does the Atlantic Mutual policy, the policy exempted from coverage only "the hazard arising out of faulty design, maps, plans and specifications."

A standard test as to what does fall within the meaning of a professional act is set forth in 7A *Appleman, Insurance Law and Practice* § 4504.3 (1972 Supp. at 77).

A "professional" act or service within a malpractice policy is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor or skill and the labor or skill is *predominantly mental* or *intellectual*, rather than physical or manual * * * [Emphasis added]

See also *Multnomah County v. Oregon Auto Ins. Co.,* 256 Ore. 24, 470 P. 2d 147, 150 (Sup. Ct. 1970).

A judicial definition of "professional services" is set out in *Aker v. Sabatier,* 200 So. 2d 94 (La. Ct. App. 1967).

Professional services, in its usual connotation, means services performed by one in the ordinary course of the practice of his profession, on behalf of another, pursuant to some agreement, express or implied, and for which it could reasonably be expected some compensation would be due. [at 97]

The contract herein reads:

The supervision by the Engineer contemplated by this contract shall be that normally provided by a Consulting Engineer. The Engineer shall watch and report on the progress of the work and shall promptly report to the Township any substantial deviations from the contract.

■ The supervision by Killam Associates with both parties contracted for is predominantly mental or intellectual. It required observation and constant evaluation of the work being done. The main thrust of the original plaintiffs' cause of action was the alleged failure of Killam Associates to observe that the contractor was violating the New Jersey State Construction Safety Code as to the manner in which the trench was fortified. The acts of Killam Associates in this respect clearly required the specialized knowledge and mental skill of a professional engineer.

■ The service performed herein was within the ordinary practice of Killam Associates as professional engineers. It was done on behalf of another, the township, pursuant to a contract which provided Killam Associates with monetary compensation. It is generally held that under statutes relating to the licensing of professional engineers, the field of engineering involves the making of plans and designs as well as the supervision of construction. *Smith v. American Packing and Provision Co.,* 102 *Utah* 351, 130 *P.* 2d 951, 957 (Sup. Ct. 1942); *Perfecting Service Co. v. Product Develop. and Sales Co.,* 261 *N. C.* 660, 136 *S. E.* 2d 56, 65 (Sup. Ct. 1964).

It is the decision of this court that Killam Associates was derelict in providing professional services specifically excluded from coverage under the Atlantic Mutual Insurance

Company policy. The full amount of the settlement of $68,500 is to be paid by the Continental National American Insurance Company which under its policy specifically covered this type of professional activity.

Judgment is entered in favor of the plaintiff.